# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-0474V

|  |  |
|---|---|
| VERONICA GROOM, | Chief Special Master Corcoran |
| Petitioner, | Filed: December 18, 2025 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Renee J. Gentry, The Law Office of Renee J. Gentry, Washington, DC, for Petitioner.*

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On April 5, 2023, Veronica Groom filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 6,

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

The parties were unable to settle the claim, and have now fully briefed entitlement and damages (ECF Nos. 34, 36, 37). For the reasons set forth herein, I find that Petitioner is entitled to compensation, and award damages for actual pain and suffering in the amount of $60,000.00, plus $93.05 for unreimbursed, out-of-pocket medical expenses.

## I.     Factual Evidence

### A.  Medical Records

On October 6, 2021, Petitioner received a flu vaccine in her left deltoid. Ex. 1 at 6. Five days later (October 11, 2021), she saw a hematology and oncology specialist for an unrelated treatment. Ex. 15 at 10. The record of that visit does not mention shoulder pain.

On October 27, 2021, now three weeks after vaccination, Petitioner saw Carey-Walter Closson, M.D., at the National Spine and Pain Center for "evaluation of pain involving the axial spine with some symptoms involving the left shoulder as well." Ex. 2 at 6. Petitioner related her shoulder symptoms to a flu vaccine received in her upper deltoid, but stated "her most significant issue is in the thoracolumbar axial spine." *Id.* Petitioner was given a topical medication for her shoulder pain and a different medication for her back pain. *Id.*

Petitioner underwent a physical therapy ("PT") evaluation for her back pain on November 8, 2021. Ex. 3 at 115. The record is silent on Petitioner's shoulder, other than recording strength ratings for her shoulders and other joints. *Id.* at 116. She attended two more PT sessions for her back over the following week, without mentioning her shoulder. *Id.* at 107-110. On November 18, 2021, she attended another PT session for her back and reported that she "continues to feel pain in L shoulder" following vaccination, and would bring a referral for shoulder PT at her next session. *Id.* at 105.

Petitioner returned to Dr. Closson on November 15, 2021, stating that she was now "most concerned with her left deltoid pain." Ex. 2 at 9-10. She was given more topical medication and a PT referral for her left shoulder pain. *Id.*

On November 22, 2021, Petitioner underwent a PT evaluation for her left shoulder and back pain. Ex. 3 at 99. She stated that her shoulder pain "began after a flu shot October 4, 2021." *Id.* She "felt excruciating pain in L upper arm the evening of the injection" and her left "upper arm has been sore since the shot." *Id.* Petitioner thought "the injection was delivered higher in her deltoid muscle that it usually is." *Id.* She reported pain when reaching behind her or to the side, as well as when driving and lifting or carrying items. *Id.* She rated her pain two out of ten, ranging from one at best to six at worst. *Id.*

On examination, her left shoulder range of motion was reduced in flexion and abduction compared to her right shoulder. *Id.* at 100.

Petitioner attended ten additional PT sessions for her back and left shoulder between November 29 and December 30, 2021. *Id.* at 68-105. At her final session Petitioner reported that she continued to "feel pain in L shoulder with daily activity." *Id.* at 68. At discharge, the therapist recommended that Petitioner consult with an orthopedic physician and return to her pain management specialist. *Id.*

Petitioner followed up with Dr. Closson concerning her left shoulder and back pain on January 6, 2022. Ex. 2 at 13. Petitioner reported that her lower back was doing well, but her left shoulder pain had persisted despite a month of PT. *Id.* Dr. Closson noted Petitioner's "pain is in the lateral deltoid region" and diagnosed Petitioner with left rotator cuff syndrome. Dr. Closson ordered an MRI and prescribed pain relief patches. *Id.* at 13, 15.

Petitioner underwent a left shoulder MRI on January 6, 2022. Ex. 4 at 11. The MRI showed moderate to severe chondral thinning with subchondral edema, moderate to severe supraspinatus and infraspinatus tendinosis with low grade interstitial tears of the supraspinatus, and moderate subacromial/subdeltoid bursitis. Ex. 4 at 11.

Petitioner returned to Dr. Closson the following week (January 14, 2022). Ex. 2 at 16. She felt "near complete relief of her pain" from the topical pain relief patches she had received at her prior visit. *Id.* at 18. She was instructed to continue using the patches and consult an orthopedist. *Id.*

Petitioner saw orthopedic surgeon Ricardo Pyfrom, M.D., for left shoulder pain on February 7, 2022 Ex. 5 at 2. She reported severe left shoulder pain since October 6, 2021, explaining that she could not raise her left arm or reach behind her back. *Id.* She had attended PT and undergone an MRI, in addition to treating the pain with ice packs, heat, and topical pain relief patches. *Id.* Dr. Pyfrom assessed Petitioner with bursitis, impingement syndrome, and osteoarthritis of the left shoulder, describing her osteoarthritis as "severe." *Id.* at 3. He observed that her MRI showed "significant bursitis with evidence of chronic changes of osteoarthrosis of the glenohumeral joint and the AC joint. She noted severe bursitis did not develop until she had a flu shot given to her on October 6th." *Id.* She was "understandably reluctant" to have another injection in her shoulder, and Dr. Pyfrom prescribed oral steroids. *Id.*

Petitioner returned to Dr. Pyfrom the following month (March 1, 2022). Ex. 5 at 4-5. The oral steroids had relieved her pain, but the pain returned when she finished the medication. *Id.* She remained reluctant to have a cortisone injection "when she feels the condition results from injection to the left shoulder." *Id.* He prescribed another course of oral steroids. *Id.*

3

On March 17, 2022, Petitioner returned to Dr. Closson for her left shoulder pain and other conditions. Ex. 2 at 20-21. She rated her shoulder pain five out of ten and described the pain as "intermittent" and "sharp." *Id.* at 21. Petitioner was instructed to follow up with Dr. Pyfrom for the shoulder pain. *Id.*

Petitioner followed up with Dr. Pyfrom on March 28, 2022, reporting she had improved after taking oral steroids, and was "feeling much better." Ex. 5 at 7. She had attended a water aerobics class, but still "cannot lift the weights in the water class." *Id.* He recommended additional PT. *Id.* at 8.

Petitioner underwent a PT evaluation of her left shoulder on April 5, 2022. Ex. 3 at 64. She now rated her pain three out of ten, ranging to ten out of ten at worst, describing the pain as "aching" and "stabbing." *Id.* She completed 19 sessions between April 5 and June 17, 2022. *Id.* at 3-66. During the last PT session, Petitioner reported no pain, and at worst her pain reached three out of ten. *Id.* at 3.

Petitioner followed up with Dr. Pyfrom on May 10, 2022. Ex. 5 at 10. Dr. Pyfrom noted that Petitioner had shown "considerable improvement with the left shoulder range of motion and modest improvement in the left shoulder strength with resistance." *Id.* at 11. He recommended that she continue PT for four more weeks. *Id.*

Two months later (July 14, 2022), Petitioner returned to Dr. Pyfrom for a final follow-up. Ex. 8 at 6. She had "improved after completing physical therapy [two] weeks ago" and reported that she was now able to lift weights in her water aerobics class. *Id.* She described her pain as "intermittent and occasional." *Id.* Dr. Pyfrom stated that her "left shoulder bursitis is resolved," and encouraged her to continue home exercises. He thought her residual stiffness and pain were "likely due to glenohumeral osteoarthritis" and, because she was not interested in surgery for her arthritis, she was at maximal medical improvement. *Id.* at 7.

### B. Testimonial Evidence

Petitioner filed an affidavit in support of her claim. Ex. 22. After vaccination, "[t]he pain was almost immediate and continued escalating that evening to severe" and she was unable to move her left arm without severe pain or the assistance of her right hand. *Id.* at ¶ 5. Her primary care physician was unable to see her for an emergency appointment, and the recommended orthopedists were not available for a month or more. *Id.* at ¶ 6. Therefore, Petitioner found another provider on her own and scheduled the earliest available appointment on October 27, 2021. *Id.* at ¶ 7. Petitioner states that she called and scheduled this appointment on October 13, 2021 – seven days after vaccination. *Id.* at ¶ 7.

Dr. Closson initially ordered PT only for Petitioner's back, but at Petitioner's request later ordered PT for her shoulder as well. Ex. 22 at ¶ 7. Unfortunately, the PT, medication, patches, and gels were "not effective in eliminating the shoulder pain." *Id.*

4

After Petitioner completed PT without relief, Dr. Closson ordered a left shoulder MRI and referred her to Dr. Pyfrom. *Id.* at ¶ 8.

Petitioner's pain was "mild for about 4 days" after taking the first course of oral steroids Dr. Pyfrom prescribed. Ex. 22 at ¶ 8. At her next appointment, she requested and received a different oral steroid prescription, after which her pain became "mild to numb." *Id.*

Petitioner states that she no longer has complete use of her left arm. Ex. 22 at ¶ 11. Previously, family members and neighbors called her for help. *Id.* Now, instead, she has to ask for help with daily activities including grocery shopping, laundry, and changing sheets. *Id.* She has also had to make changes to her exercise routine and does only right-handed exercises. *Id.* She continues to feel a "mild numbness" in her shoulder constantly, as well as "moderate" pain daily during routine activities. *Id.* at ¶ 13. She continues to take over-the-counter medications, which provide temporary relief. *Id.*

Petitioner filed a letter from her aqua aerobics instructor, Kathy Carrington. Ex. 23. The letter is signed, but not sworn. Ms. Carrington has been Petitioner's instructor for over ten years, and "Ms. Groom has always been very active with no limitations in movement or stamina" and had been "one of my most physically fit students" until her injury. *Id.* Ms. Carrington continued that Petitioner had "complained about a flu shot" and that "she did not use her left arm for an entire semester" and at times couldn't attend class "because of the pain." *Id.*

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are

also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five-month mark).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

7

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Parties' Arguments on Entitlement

Petitioner argues that she has established the two-day onset requirement for a Table SIRVA, emphasizing that she consistently reported pain that began immediately after vaccination. Petitioner's Motion for Ruling on the Record, filed Sept. 20, 2024 (ECF No. 34), at *14-16 ("Mot."). Her first treatment for shoulder pain occurred just 21 days after vaccination, and she initially *sought* care by making this appointment just one week after vaccination. *Id.* at *14 n.7. And no records state a contrary onset.

Respondent asserts that the record does not preponderantly establish onset of pain within 48 hours of vaccination. Respondent's Response, filed Nov. 22, 2024, at *5-6 (ECF No. 36) ("Resp."). He argues that Petitioner first sought care 21 days after vaccination, and while she referenced her prior receipt of the vaccine, the record contains no indication of when her symptoms began. *Id.* at *6.

### C. Factual Findings on Onset

I find that the record supports a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination.

Petitioner first saw a treater for her shoulder pain just three weeks after vaccination, and at this time related her pain to that vaccination (and consistently thereafter). This relatively-limited degree of initial treatment delay does not inherently call into question the accuracy of such onset reporting. It is common for SIRVA petitioners to delay seeking care for this amount of time – or *much longer* – because they expect the pain to go away on its own. *See Shiver v. Sec'y of Health & Human Servs.*, No. 21-1961V, 2024 WL 4544185, at *11 (Fed. Cl. Spec. Mstr. Sept. 16, 2024) (finding evidence preponderantly established that onset of shoulder pain occurred within 48 hours of vaccination where the petitioner first sought care just two weeks after vaccination); *Amor v. Sec'y of Health & Human Servs.*, No. 20-0978V, 2024 WL 1071877, at *6 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (noting that it is "common for petitioners in SIRVA cases to delay seeking care for weeks, or even months, in hopes that the pain will resolve without treatment" and finding onset was within 48 hours when Petitioner first sought care 23 days after vaccination).

In addition, and contrary to Respondent's suggestion, there is no requirement that a medical record state that a petitioner's pain began specifically within 48 hours in order for a claimant to succeed on a SIRVA Table claim. Instead, the standard for resolving factual questions such as the onset of pain is whether the petitioner has demonstrated the disputed fact by a preponderance of the evidence. Vaccine Act § 13(a)(1); *Roberson*

*v. Sec'y of Health & Human Servs.*, No. 21-2309V, 2025 WL 605724 (Fed. Cl. Spec. Mstr. Jan. 24, 2025) (stating that the "absence of a specific date" of onset in medical records is not "compelling or particularly meaningful," and finding onset within 48 hours where the petitioner sought care 23 days after vaccination and reported pain for two to three weeks at the time of vaccination).

In this case, at Petitioner's initial PT evaluation for her shoulder (occurring less than two months post-vaccination) she reported excruciating pain that began "the evening of" vaccination, and that her left arm "has been sore since the shot." Ex. 3 at 99. She also more generally had been reporting left shoulder pain since October 6, 2021 – the date of vaccination – to Dr. Pyfrom. Ex. 5 at 2. And Petitioner has provided testimonial evidence stating that her pain was "almost immediate" and escalated that evening to severe. Ex. 22 at ¶ 5. Table onset is established.

### D. Factual Findings on Remaining SIRVA QAI Criteria and Statutory Requirements

The remaining QAI and statutory requirements are not disputed, and I find that they are satisfied. The record does not contain preponderant evidence that Petitioner had a history of left shoulder pain or any other condition that would explain her post-vaccination symptoms.[4] Ex. 4. She exhibited reduced range of motion, and her pain and range of motion limitations were limited to the vaccinated shoulder. Exs. 3, 5. She received a covered vaccine in the United States. Ex. 1 at 6. She experienced residual effects of her injury for more than six months. Ex. 3 at 3-66; Ex. 5 at 10. And she states that a civil action has never been filed by anyone against a vaccine manufacturer or administrator for vaccine related injuries on her behalf, and no one has collected awards of settlements from them for these injuries. Ex. 22 at ¶ 14.

Petitioner has established by preponderant evidence that all Table SIRVA and QAI requirements are established. Further, she has established all statutory requirements for entitlement. Thus, Petitioner is entitled to compensation.

## III. Damages

### A. Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Matthews v. Sec'y of*

---

[4] Although Petitioner had a pre-vaccination history of mid-back pain below her left shoulder blade (Ex. 4 at 48), Respondent does not assert that this condition would explain Petitioner's symptoms following vaccination, nor would the evidence support such a finding.

9

*Health & Human Servs.*, No. 22-1396V, 2025 WL 2606607 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

### B. Parties' Damages Arguments

Petitioner seeks $70,000.00 for pain and suffering, relying on three decisions in which the petitioners were awarded $75,000.00: *Black*, *Miller*, and *Cyr*.[6] Mot. at *20-24. Petitioner asserts that she has suffered from pain since vaccination "for a total of nearly 36 months to date" – although there is no evidence in the record to support this duration. *Id.* at *20. Petitioner states she treated with 19 sessions of PT,[7] topical creams and patches, oral steroids, and over-the-counter medications. *Id.* She initially took steps to receive care just seven days after vaccination, although she could not be seen until 21 days after vaccination. *Id.* at *20.

Petitioner emphasizes that during the eight to nine months after vaccination, she routinely reported her shoulder pain as more significant and painful than her ongoing back pain. Mot. at *20. While she made great progress in PT, she continues to experience intermittent and occasional pain. *Id.* at *21. Petitioner characterizes her injury as being moderate in severity, with 36 months total duration and seven to eight months "of pain requiring pain medications and PT." *Id.* at *24.

Respondent proposes a pain and suffering award of $45,000.00, relying on decisions in *Klausen* and *Langner*, in which the petitioners were each awarded a larger

---

[5] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[6] *Black v. Sec'y of Health & Human Servs.*, No. 20-0777V, 2022 WL 3335594 (Fed. Cl. Spec. Mstr. July 12, 2022; *Miller v. Sec'y of Health & Human Servs.*, No. 20-604V, 2022 WL 3641716 (Fed. Cl. Spec. Mstr. July 22, 2022); and *Cyr v. Sec'y of Health & Human Servs.*, No. 21-12V, 2024 WL 991944 (Fed. Cl. Spec. Mstr. Feb. 5, 2024).

[7] Respondent notes that Petitioner attended 11 PT visits for both her shoulder and back, and 19 sessions just for her shoulder. The record supports a finding that Petitioner attended 30 sessions of PT that were, in whole or in part, for her left shoulder.

sum - $60,000.00.[8] Resp. at *8-12. Respondent characterizes Petitioner's injury as "arguably moderate" for about six months, followed by three months of mild symptomatology. *Id.* at *8-10. Respondent notes that by nine months after vaccination, Dr. Pyfrom attributed all of Petitioner's residual symptoms to osteoarthritis, and opined that her left shoulder bursitis had resolved. *Id.* at *8 (citing Ex. 8 at 6-7). Thus, Respondent disputes Petitioner's contention that her injury duration is 36 months, arguing it persisted for only nine months. *Id.* at *8-9.

Respondent acknowledges that Dr. Pyfrom's records initially describe Petitioner's pain as severe, though in Respondent's view the treatment records over the course of 11 visits prior to seeing Dr. Pyfrom do not so describe her symptoms. Resp. at *9. Nevertheless, this characterization of her pain as severe was temporally limited, and her pain may have been due in part to osteoarthritis. *Id.* In any event, after two rounds of oral steroids, by just under six months after vaccination, Petitioner was feeling much better, with reduced pain. *Id.*

Petitioner's reply largely reiterates her prior arguments, pointing out that Respondent concedes that she suffered about six months of moderate symptomatology. Petitioner's Reply, filed Nov. 26, 2024, at *2 (ECF No. 37) ("Reply"). And she emphasizes that *Cyr*, 2024 WL 991944, demonstrates that a mild to moderate SIRVA was "justifiably valued at $75,000.00." Reply at *2.

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

The medical records and other evidence establish that Petitioner suffered a mild to moderate SIRVA that resolved within nine months. Although she asserts that her shoulder pain continued well beyond that time, Dr. Pyfrom credibly opined that her bursitis was resolved by nine months, with her remaining symptoms more likely attributable to severe osteoarthritis. And there is *no* evidence that her symptoms continued for 36 months. At best, her affidavit (signed March 27, 2023) could arguably support residual symptoms for no more than a year and a half post-onset. Ex. 22. But I find convincing Dr. Pyfrom's opinion that her residual symptoms were attributable to her unrelated arthritis, and her SIRVA symptoms resolved within nine months of vaccination.

---

[8] *Klausen v. Sec'y of Health & Human Servs.*, No. 19-1977V, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023), and *Langner v. Sec'y of Health & Human Servs.*, No. 20-1965V, 2024 WL 3422749 (Fed. Cl. Spec. Mstr. June 11, 2024).

Petitioner's comparables involve claimants with injuries that persisted for longer and/or required more care than she did. Of the cases the parties cite, *Klausen*, 2023 WL 2368823, provides a particularly good comparison to this case, as both Ms. Groom and the *Klausen* petitioner exhibited degenerative changes to their shoulders in addition to their SIRVAs. Both petitioners treated with PT, although Ms. Groom attended almost twice as much PT. Ms. Groom sought care much sooner than the *Klausen* petitioner, but the *Klausen* petitioner's injury persisted longer than Ms. Groom's. The *Klausen* petitioner underwent five cortisone injections (while Ms. Groom received none) but rated his pain lower than Ms. Groom. Taking these factors into consideration, I find that an award of **$60,000.00** for pain and suffering is appropriate in this case.

### Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I GRANT Petitioner's motion for a ruling on the record, and find that Petitioner suffered an injury that meets the definition for a Table SIRVA and is entitled to compensation. I find that $60,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering**.[9] Additionally, I find that Petitioner is entitled to **$93.05 in out-of-pocket expenses**.[10]

Based on consideration of the record as a whole and arguments of the parties, **I award Petitioner a lump sum of $60,093.05, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] The parties agree that this sum is reimbursable. Mot. at *19; Resp. at *6.

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.